# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division



**UNITED STATES OF AMERICA**

v.                                                                                          Criminal No. **3:13CR04**

**MARION W. CARTER, JR.,**

Petitioner.

## MEMORANDUM OPINION

Marion W. Carter, Jr., a federal inmate proceeding *pro se*, submitted this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (*"Pro se* § 2255 Motion," ECF No. 109). Carter later moved to file supplemental pleadings and to add a claim pursuant to *Johnson v. United States*, 135 S. Ct. 2551 (2015). (ECF No. 119.) After the Court already had served the Government, and the Government had filed its initial response, the Court appointed counsel for Carter, and directed counsel to file "any amended § 2255 Motion that includes all claims [that Carter] wishes to raise by way of § 2255." (ECF No. 122, at 1.) Subsequently, counsel filed a "Motion for Leave to File Supplemen[tal] Claims, Supportive Facts and Memorandum of Law in Support of § 2255," that, in accordance with its prior Memorandum Order, the Court construed as the Amended § 2255 Motion ("§ 2255 Motion," ECF No. 130–1; *see* ECF No. 135, at 1).[1] By Memorandum Order entered on February 20, 2018, the Court explicitly stated that the § 2255 Motion supplanted all other versions of the § 2255 motion or any

---

[1] The Court previously explained to Carter that this § 2255 Motion supplants all other versions of the § 2255 motion or any supplements. The Court also specifically noted that it would "only consider those arguments raised in the § 2255 Motion filed by counsel (ECF No. 130–1) and will not consider any document or exhibit attached to any supplement or any other version of the § 2255." (ECF No. 135, at 2; *see also* ECF No. 138, at 1–2.)

supplements. (ECF No. 135.) In his § 2255 Motion, Carter raises the following claims for relief:[2]

> Claim One: Counsel rendered ineffective assistance by "fail[ing] to investigate the veracity of the factual statements made in the warrant affidavits in order to challenge the validity of the warrant [and] the violation of 18 U.S.C. § 1623." (§ 2255 Mot. 1.)
>
> Claim Two: "Failure to subpoena [Carter's] alibi witness in time for trial violat[ed] his Sixth Amendment right to compulsory process and effective assistance of counsel." (*Id.* at 6.)[3]
>
> Claim Three: "Intimidation of alibi witness, on behalf of the Government, violated [Carter's] right under the Sixth Amendment to compulsory process." (*Id.* at 8.)
>
> Claim Four: "Relief should be granted [to Carter] under the ruling of *Johnson v. [United States]*, 135 S. Ct. 2551 (2015)." (*Id.* at 10.)

The Government has responded, arguing that Carter's claims lack merit. (ECF No. 136.) Carter has filed his Reply. (ECF No. 137.)[4] The matter is ripe for disposition. For the reasons stated below, the § 2255 Motion (ECF No. 130–1) will be DENIED.

---

[2] The Court corrects the capitalization, emphasis, punctuation, and spacing in quotations from Carter's submissions.

[3] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

[4] By Memorandum Order entered on August 9, 2018, the Court explained to Carter that it would not consider any new claims or supplemental facts presented for the first time in the Reply and provided Carter an opportunity to file another amended § 2255 motion to add any new claims. (ECF No. 138.) Carter failed to avail himself of that opportunity in a timely manner.
On November 21, 2018, the Court received a *pro se* response from Carter to the Court's August 9, 2018 Memorandum Order. (ECF No. 142.) In his response, Carter indicates that he only intended the Reply to clarify his claims, and states that "[n]o new claims are purported" in his Reply. (*Id.* at 2–3.) From the Court's review of the rambling Reply, that is simply not true. Carter also attaches eleven pages of facts and argument that he sent to counsel for use in his Reply. (ECF No. 142-1, at 1–11.) Carter is represented by counsel, and the Court has repeatedly told Carter that the Court will only consider those submissions from counsel.
Attached to the Reply filed by counsel are copies of the search warrants that Carter contends contain false declarations. (ECF 137-1.) These are records that are necessary to the disposition of Carter's Claim One, and the Court references the content of these attachments.

# I. PROCEDURAL HISTORY

On April 2, 2013, Carter was named in a seven-count Superseding Indictment charging him with three counts of robbery affecting commerce, in violation of 18 U.S.C. § 1951(a) ("Hobbs Act robbery") (Counts One, Three, and Five), possession of and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts Two, Four, and Six), and possession of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count Seven). (Superseding Indictment 1–5, ECF No. 19.) The charges resulted from a November 2, 2012 robbery of the Baskin Robbins located at 6940 Forest Hill Avenue, the November 8, 2012 robbery of Fast Auto Loans located at 6150 Midlothian Turnpike, and the November 14, 2012 robbery of the Fas Mart located at 2107 Semmes Avenue. (*See id.*; Criminal Compl. 3–6, ECF No. 1.) Carter moved to sever Count Seven from the remaining counts. (ECF No. 24.) However, the Court denied that motion. (ECF Nos. 35, 36.) Thereafter, on May 1, 2013, Carter pled guilty to Count Seven without a plea agreement. (ECF Nos. 44, 45.) On July 26, 2013, a jury found Carter guilty of Counts One through Five and not guilty of Count Six. (ECF No. 74, 1–3.) On October 28, 2013, the Court sentenced Carter to a total of 408 months of incarceration for Counts One through Five and Seven. (J. 3, ECF No. 84.) Carter appealed, challenging the sufficiency of the evidence for Counts One through Five. *See United States v. Carter*, 575 F. App'x 149, 149 (4th Cir. 2014). The Fourth Circuit rejected these arguments and affirmed his convictions. *Id.* at 150–51. On December 11, 2015, Carter initiated the instant § 2255 proceedings.

# II. INEFFECTIVE ASSISTANCE OF COUNSEL

## A. Ineffective Assistance of Counsel Standard

To demonstrate ineffective assistance of counsel, a convicted defendant must first show that counsel's representation was deficient, and, second, that the deficient performance

3

prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, a convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, the Court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### B. Claim One

In Claim One, Carter alleges that counsel rendered ineffective assistance by "fail[ing] to investigate the veracity of the factual statements made in the warrant affidavits in order to challenge the validity of the warrant [and] the violation of 18 U.S.C. § 1623."[5] (§ 2255 Mot. 1.) Carter also appears to fault counsel for failing to request a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), based on these alleged false statements. (§ 2255 Mot. 2.) Under the section called "Supporting Facts," Carter identifies three false declarations by investigating officers in support of the warrant affidavits. (*Id.* at 1–2.) The first alleged false declaration involves a statement made by Detective Jack Larry to the state magistrate. (*Id.* at 1.) The second alleged false declaration involves the same statement repeated by Special Agent Jeffrey Clark to the federal Magistrate Judge. (*Id.* at 1–2.) These two alleged false declarations pertain to the

---

[5] This statute pertains to "[f]alse declarations before grand jury or court." 18 U.S.C. § 1623. The statute states in relevant part: "Whoever under oath . . . in any proceeding before or ancillary to any court . . . knowingly makes any false material declaration or makes or uses any other information . . . knowing [it] to contain any false material declaration, shall be fined . . . or imprisoned not more than five years." *Id.* § 1623(a).

4

availability of certain portions of the security video from the robbery of Baskin Robbins on November 2, 2012. (*Id.*) The third alleged false declaration pertains to whether Special Agent Clark was actually present at the execution of the search warrant at Carter's residence. (*Id.* at 2.)

### 1. Declarations Pertaining to the Security Video

In a somewhat vague manner, Carter contends that:

> Petitioner asserts that Detective Jack Larry of the Richmond Police Department falsely declared under oath to Magistrate Edward J. Sasser on November 18, 2012, that security video provided by the Baskin Robbins store showed the suspected unknown masked robber drove an older model white Isuzu Rodeo to commit the robbery. Then on July 25, 2013, Detective Larry inconsistently declared under oath [at trial] that he never possessed such video.
> Petitioner further asserts that Special Agent Jeffrey Clark of the Bureau of ATF falsely declared under oath to Magistrate Judge David J. Novak on February 8, 2013, that security video provided by the Baskins Robbins store showed the suspected unknown masked robber drove an older model white Isuzu Rodeo to commit the robbery. This is the same statement fabricated in Detective Larry's warrant affidavit.

(§ 2255 Mot. 1–2.) Carter appears to argue that Detective Larry testified at trial that he never actually possessed the Baskin Robbins security video that depicted the Isuzu Rodeo. Carter argues that counsel rendered ineffective assistance when he "failed to investigate these factual statements as requested, denying [Carter] a request for *Franks* Hearing." (*Id.* at 2.)

#### a. Summary of the Record

As a preliminary matter, because Carter's factual presentation of his claim is confusing, the Court must parse the record to ascertain exactly in what context these alleged false statements were made. With respect to the first alleged false statement made by Detective Larry, it appears that on November 18, 2012, Detective Larry applied for a search warrant of Carter's home. (ECF No. 137–1, at 1.) That search warrant requested "[a]ny clothing worn during the robbery, any paperwork use[d] to plan or carry out the robbery, [and] any firearms or ammunition." (*Id.*) The search warrant first described facts related to a robbery at Fas Mart on

5

November 14, 2012 that the Court need not recount here. (*Id.* at 4.) As relevant to this claim, Detective Larry swore to the following:

> On 11-2-2012, the Baskin Robbins located at 6940 Forest Hill Ave. contacted police and reported that the business has been robbed at gunpoint by a single masked male. Security video provided by the business showed the suspect arrived on scene approximately 20 minutes prior to the robbery. The suspect drove into the Baskin Robbins parking lot and parked in the lot. The suspect exited his vehicle and walked over to the tree line beside the business. The suspect disappears from view in the tree line then returns to his vehicle and drives away from the lot. The security camera shows the suspect is driving a white older model Isuzu Rodeo. Approximately, 20 minutes later, the suspect exits the tree line on foot and walks directly to the Baskin Robbins. The suspect's clothing can be clearly seen on the security cameras. The suspect then robs the business with a small frame handgun and runs back into the tree line disappearing from the camera footage.
> On 11-8-2012, The Fast Lane Auto Loans office located at 6150 Midlothian Tpke. contacted police and reported being robbed at gunpoint by a single masked male. The security footage showed that the suspect was wearing the same clothing as the suspect who robbed the Baskin Robbins four days prior. It also showed the suspect used a small frame handgun like the one used in the Baskin Robbins robbery. After robbing the business the suspect exits on foot and flees the scene.
> In the three above listed incidents, Fas Mart at 2107 Semmes, Baskin Robbins at 6940 Forest Hill, and the Fast Auto Loans [at] 6150 Midlothian Turnpike the suspect wore the same clothing and used the same small frame handgun.
> After the attempted robbery at the Fas Mart, the suspect vehicle was found to be a white Honda Accord Virginia license WFY-1633. This vehicle is registered to Enterprise Rental car. Enterprise records showed the vehicle was rented by a Marion W. Carter Jr. DMV records show that Mr. Carter owns a white 1997 Isuzu Rodeo and I observed this vehicle parked next to Mr. Carter's apartment building in the 400 block of Westover Hills Blvd on 11-16-2012 and 11-18-2012. The white Honda Accord rented by Mr. Carter was also found parked in the 400 Block of Westover Hills Blvd. several hours after the attempted robbery at the Fas Mart. A search of Mr. Carter['s] criminal history also showed that he is a seven[-]time convicted felon with a conviction for robbery and use of a firearm. On 11-6-12, Mr. Carter was involved in [a] motor vehicle crash while he was driving his white 1997 Isuzu Rodeo. Mr. Carter gave his address as 478 Westover Hills Blvd Apartment 205. Mr. Carter also gave the same address to Enterprise Rental Car when he rented the white Honda Accord. Mr. Cater [sic] height and weight are listed in the DMV database and Mr. Carter's height and weight match the description given by the victim/witnesses during the robberies.
> Mr. Cater [sic] gives his address as 478 Westover Hills Blvd. [A]partment 205 and two of the vehicles used in the above robberies have been found parked

at this address. A search of Mr. Carter's residence is needed in attempt to locate evidence from the above three incidents.

(*Id.* at 4–5.) Based on the above summary, the magistrate found probable cause and issued a search warrant for Carter's home. (*Id.* at 1.)

On April 29, 2013, counsel filed a motion in limine to exclude photographs of and testimony about the video recording from the Baskin Robbins robbery, and much of what Carter appears to take issue with here was litigated in that motion. (ECF No. 38, at 1–4.) The motion explained that,

> [t]he government has indicated that it intends to introduce (1) still pictures, taken by a law enforcement officer, of a television screen allegedly depicting the robber before and during the time of the November 2, 2012 robbery in a surveillance camera video; and (2) testimony of that police officer and the employee of the store regarding what they saw on that television screen. The surveillance video has been destroyed or lost and the government intends to introduce testimonial evidence regarding the video in the absence of the original. These pictures and this testimony is offered by the government to assist in proving the identity of Mr. Carter as the person responsible for this and the other two robberies.

(*Id.* at 1.) During the hearing on the motion, counsel noted:

> The witnesses who are supposed to testify about what they saw on this screen did not actually see the event as it was happening on the screen. Evidently, they came in later, they downloaded or somehow were able to take this videotape, and it covered about 20 to 25 minutes before the robbery and then right after the robbery as supposedly the robber was leaving through the rear of the Baskin Robbins into the wooded area. They didn't actually see it as it happened, but brought it down from the computer, from the surveillance tapes, and reviewed it later.

(May 1, 2013 Tr. 11–12, ECF No. 102.) Both the Government and counsel agreed that it was undisputed that the videotape of the rear parking lot had been destroyed because it was taped over with later footage. (May 1, 2013 Tr. 12.) The Government explained that after the robbery, Detective Kane came to the scene and with the owner of Baskin Robbins, reviewed video from eight to ten cameras. (May 1, 2013 Tr. 12–13.) In an effort to move quickly, Detective Kane took photographs of the video screens playing the camera footage and then instructed the owner

7

to download certain portions of the video. (May 1, 2013 Tr. 13–14.) The Government explained that there was a miscommunication over which portions to download, but that Detective Kane believed that the video footage from the back lot was clearly relevant. (May 1, 2013 Tr. 14.) The Government noted that they had the video of the car driving in and leaving but proffered that the missing portion of the video was "the person getting out of the car, walking into the tree line, and coming back." (May 1, 2013 Tr. 15.) The Court denied the motion. (May 1, 2013 Tr. 16.)

During trial, Detective Larry testified that Detective Kane responded to the call, but that Detective Larry took over the investigation of the Baskin Robbins robbery the morning after the robbery occurred. (July 25, 2013 Tr. 233, ECF No. 93.) Detective Larry received a thumb drive of the downloaded video which he believed at that time was a complete copy of the surveillance video from the incident. (July 25, 2013. Tr. 234.) Detective Larry attempted to view the video, but it was not compatible with the police system, so he sent it to IT, and it "was weeks before [he] got it back and found that [he] had an issue with the video." (July 25, 2013 Tr. 234.) Detective Larry explained that he "only had a certain portion" of the rear camera. (July 25, 2013 Tr. 234–35.) Detective Larry attempted to obtain the lost video from Baskin Robbins, but "the system overwrites after two weeks and the data was unfortunately gone." (July 25, 2013 Tr. 235.) Detective Larry testified that he reviewed surveillance from Baskin Robbins, Fas Mart, and Fast Auto Loans, and that he believed the robberies were committed by the same offender because of the consistency of the suspect's clothing and the type of weapon. (July 25, 2013 Tr. 235–36.)

### b. Carter Lacked Entitlement to a *Franks* Hearing

The purpose of a *Franks* hearing is to determine whether, but for the inclusion of intentional or reckless misstatements by the affiant, an affidavit would not support a finding of probable cause. *United States v. Clenney*, 631 F.3d 658, 663 (4th Cir. 2011). A defendant

8

challenging the validity of a warrant is entitled to a hearing if he makes a preliminary showing that: "(1) the warrant affidavit contain[s] a 'deliberate falsehood' or statement made with 'reckless disregard for the truth' and (2) without the allegedly false statement, the warrant affidavit is not sufficient to support a finding of probable cause." *United States v. Fisher*, 711 F.3d 460, 468 (4th Cir. 2013) (quoting *Franks*, 438 U.S. at 155–56).

It is unclear from the record and from Carter's factual statement of his claim, exactly what "declaration" Detective Larry made that Carter contends is false. Detective Larry clearly reviewed video footage from Baskin Robbins showing the Isuzu Rodeo drive into and then out of the parking lot and used his observation of the video evidence to support the search warrant. Thus, to the extent Carter contends that Detective Larry did not possess the video depicting the robber driving a white Isuzu Rodeo, that is simply not true.

To the extent that Carter believes that Detective Larry lied in the search warrant because he personally did not review all of the video footage, this also fails to amount to a "deliberate falsehood." *Fisher*, 711 F.3d at 468. Detective Larry never stated that he personally observed all of the video footage. However, Detective Kane observed all of the video footage, including the footage from the rear camera, immediately after the robbery, and that information was appropriately presented to the magistrate in the warrant affidavit. *See, e.g., United States v. Ventresca*, 380 U.S. 102, 107–08 (1965) (citations omitted) (internal quotation marks omitted) (explaining that a warrant "affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant" so long as the affiant is credible or reliable). Thus, Carter fails to identify a false statement that would necessitate a *Franks* hearing or how

this information was material to the magistrate's finding that probable cause existed. Counsel cannot be faulted for failing to request a *Franks* hearing when none was required.[6]

Moreover, to the extent that Carter believes that Detective Larry made statements in violation of 18 U.S.C. § 1623, it is unclear how counsel could be faulted for any inaction. A violation of section 1623 is a criminal charge that must be pursued by the Government, not by defense counsel. Further, Detective Larry made no knowingly false declaration. Thus, counsel cannot be faulted for failing to "investigate" this alleged violation of § 1623.

With respect to the second statement based on the Baskin Robbins security video footage, Carter contends that

> Special Agent Jeffrey Clark of the Bureau of ATF falsely declared under oath to Magistrate Judge David J. Novak on February 8, 2013, that security video provided by the Baskins Robbins store showed the suspected unknown masked robber drove an older model white Isuzu Rodeo to commit the robbery. This is the same statement fabricated in Detective Larry's warrant affidavit.

(§ 2255 Mot. 1–2.) The record establishes that on February 8, 2013, the Magistrate Judge issued a search warrant for Carter's cellular telephone that was found during the search of his home. (ECF No. 137–1, at 15, 23.) Special Agent Jeffrey Clark's affidavit in support of the search warrant was based on the summary of probable cause from the search warrant affidavit in state court. As previously determined, this summary contained no false statement, much less "contained a 'deliberate falsehood' or statement made with 'reckless disregard for the truth.'" *Fisher*, 711 F.3d at 468 (citation omitted). Thus, counsel cannot be faulted for failing to "investigate" this alleged violation of § 1623 or failing to request a *Franks* hearing.

---

[6] Rather, the record establishes that counsel clearly investigated the statements of Detective Larry and found it prudent to file a motion in limine to exclude portions of the evidence in light of the unavailability of portions of the rear camera video. (ECF No. 38.)

10

## 2. False Declaration About Execution of Search Warrant

In the final portion of Claim One, Carter contends that "[a]lso on February 8, 2013, Agent Clark declared, under oath, to the Magistrate [Judge] that he traveled to [Carter's] residence with Detective Larry on November 19, 2012, to execute the search warrant, but he testified under oath during trial on July 25, 2013, that he did not come on the case until December 2013." (§ 2255 Mot. 2.)[7] Carter contends that "there was no Federal need to be interested in [Carter] for Agent Clark until December 2012, as he stated under oath during the jury trial." (*Id.* at 4.) Carter fails to explain how this statement would cause the "warrant affidavit [to be] not sufficient to support a finding of probable cause." *Fisher*, 711 F.3d at 468 (citation omitted). For this reason alone, Carter fails to establish any deficiency of counsel or resulting prejudice form these vague statements. *See Sanders v. United States*, 373 U.S. 1, 19 (1963) (finding denial of § 2255 motion appropriate where it "stated only bald legal conclusions with no supporting factual allegations").

Carter also fails to identify where Special Agent Clark states that he was present at the search on November 19, 2012. Rather, it appears that Special Agent Clark states generally that "Agents" conducted the search. (ECF No. 137–1, at 15.) At most, the affidavit indicates that as of February 8, 2013, the cellular phone found in the search was in the custody of federal agents. (*Id.* at 16.) Thus, Carter fails to identify a false statement that would necessitate a *Franks* hearing or how this information was material to the Magistrate Judge's finding that probable cause existed. Counsel cannot be faulted for failing to "investigate" this alleged violation of § 1623 or failing to request a *Franks* hearing.

---

[7] The Court believes that December 2013 was likely a typographical error and that Carter means December 2012.

11

In sum, Carter fails to demonstrate any deficiency of counsel or resulting prejudice, and accordingly, Claim One will be DISMISSED.

### C. Claim Two

In Claim Two, Carter faults counsel for "fail[ing] to subpoena [Carter's] alibi witness in time for trial violating his Sixth Amendment right to compulsory process and effective assistance of counsel." (§ 2255 Mot. 6.) Carter contends that his alleged alibi witness for the Fas Mart robbery on November 14, 2012, Rodney Smith, had previously "made every appointment set by trial counsel to give his version of what happened." (*Id.*) Carter argues that "[c]ounsel knew that Smith was critically important to [Carter's] defense" (*id.* at 7), but did not subpoena Smith, and then Smith was unavailable at trial (*id.* at 6). As a preliminary matter, counsel did indeed have a subpoena prepared and intended to serve it on Smith, but he became unavailable. (May 1, 2013 Tr. 16–21.)[8] Counsel also applied for a subpoena for Smith on May 14, 2013, and the Court issued a subpoena for Smith on July 2, 2013, far in advance of trial. (ECF Nos. 55, 68.) However, as explained more thoroughly in conjunction with Claim Three, after the Government attempted to interview Smith about the events of November 14, 2012, Smith became unavailable to defense counsel.

Carter fails to identify with the requisite specificity what favorable evidence Smith would have testified to had he been called as a witness at trial. Thus, Carter demonstrates no deficiency of counsel or resulting prejudice. *See Bassette v. Thompson*, 915 F.2d 932, 941 (4th Cir. 1990)

---

[8] Carter's claim here likely stems from counsel's statement at the May 1, 2013 hearing, during which counsel moved for a continuance, wherein he states: "Now, if it is going to be my fault that a subpoena wasn't served on him earlier, then I'm afraid there would be an issue of ineffectiveness that could be raised for my failure to serve the subpoena on him. We tried to get him served, Judge. We knew he was a critical witness from the start." (May 1, 2013 Tr. 20.) Although, counsel was willing to claim "ineffectiveness" for the failure to serve Smith, that ultimately has no bearing on the instant inquiry before the Court. As discussed herein, Carter fails to meet his burden to establish what this witness would have testified to in exculpation, and thus, fails to demonstrate deficiency of counsel or resulting prejudice.

12

(dismissing claims where petitioner failed to make an adequate proffer of witness testimony); *see also Sanders*, 373 U.S. at 19; *cf. United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004) (observing that where a petitioner faults counsel for not calling a witness, the petitioner should provide "concrete evidence of what [the witness] would have testified to in exculpation"). Accordingly, Claim Two lacks merit and will be DISMISSED.

### III. WITNESS INTIMIDATION

In Claim Three, Carter argues that the Government intimidated his alibi witness by attempting to interview him and that "violated his Sixth Amendment right to compulsory process." (§ 2255 Mot. 8.) As a preliminary matter, Carter fails to explain, and the Court fails to discern, how witness intimidation by the Government is a violation of the Sixth Amendment. Rather, "[i]mproper intimidation of a witness may violate a defendant's due process right to present his defense witnesses freely if the intimidation amounts to 'substantial government interference with a defense witness' free and unhampered choice to testify.'" *United States v. Saunders*, 943 F.2d 388, 392 (4th Cir. 1991) (citations omitted). Thus, the Court presumes that Carter intends to bring a due process claim.

Carter argues that the Government interfered with his alibi witness, Rodney Smith, who was allegedly a passenger in the white Honda Accord on the evening of November 14, 2012. Carter contends:

> The Government knew that Smith was a passenger in the White Honda Accord that was central to its case against [Carter]. The Government knew that Smith was a critical witness to the events of the evening of November 14, 2012 and had indicated that the Honda was essentially the getaway car and the means of transportation that [Carter] used to get to the Fas Mart robbery. So the prosecutor ironically sent an agent to interview this passenger who happened to have an outstanding warrant and freely chose to testify for [Carter]. However, Smith became inaccessible to the defense after the agent's visit, even though he had been completely compliant before the agent's visit.

13

(§ 2255 Mot. 9.) Carter argues that "Smith's free will choice and complete compliance to testify in [Carter's] favor was a reliable outcome lost due to the prosecutor's improper behavior constituting substantial Government interference." (*Id.* at 10.)

During the motions hearing on May 1, 2013, counsel indicated that they had a subpoena prepared for Smith and had provided the Government with notice that he would be an alibi witness. (May 1, 2013 Tr. 16.) Counsel explained that because Smith failed to come to his scheduled interview, counsel was unable to serve him with the subpoena, and counsel asked for a continuance in the case. (May 1, 2013 Tr. 17.) As supporting argument for the continuance, counsel indicated that because Smith was a passenger in the getaway car, "he is a critical witness in this case, a witness that is helpful to the defendant. And in his absence, we would be deprived of a fair trial." (May 1, 2013 Tr. 17.) Counsel explained to the Court that: "This came as a surprise to us. He would make every appointment we set. . . . So we sent an investigator out the last two days to find him and [we] couldn't find him." (May 1, 2013 Tr. 18.) In response, the Government noted that Smith was not under subpoena despite counsel's characterization of Smith as a "critical witness," and stated:

> I can tell the Court, and I informed Mr. Wagner of this, he has multiple felony convictions, and our records indicate that he has an outstanding warrant. I told Mr. Wagner this last week to inform him that since . . . we were put on notice and given his address. . . . I sent an agent out to attempt to interview him. When we went to the address, the woman at the address told my agent he didn't live there. I don't know if that's the truth or not, and I don't know whether this witness knows about the outstanding warrant. . . .
> So my take on it is that he may well have found out about the arrest warrant and is ducking Mr. Wagner. But it is difficult, Judge, but they didn't place him under subpoena.

(May 1, 2013 Tr. 18–19.) The Court granted the continuance so that the defense could locate Smith. (May 1, 2013 Tr. 21.)

14

Although the record clearly indicates that Smith became unavailable, Carter fails to establish any substantial or improper interference on behalf of the Government. Here, the Government learned that Smith would be called as an alibi witness and attempted to interview him, but was unsuccessful. The mere fact that the Government attempted to interview Smith fails to amount to "substantial interference with a defense witness' free and unhampered choice to testify." *Saunders*, 943 F.2d at 392–93 (internal quotation marks omitted) (explaining that, where agents actually interviewed the defense's witness, "the record does not demonstrate that the interviews caused either substantial or improper interference, and therefore that they improperly denied Saunders of his constitutional right to present the unhampered testimony of witnesses in his defense"). While it is unclear exactly why Smith became unavailable, the record is completely devoid of improper intimidation of Smith by the Government. Because Carter fails to demonstrate a due process violation, Claim Three will be DISMISSED.

## IV. JOHNSON-RELATED CLAIM

In Claim Four, Carter argues that his conviction under 18 U.S.C. § 924(c) in Count Four must be vacated in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). (§ 2255 Mot. 10–11.) In *Johnson*, the Supreme Court held "that imposing an increased sentence under the residual clause of the Armed Career Criminal Act [("ACCA")] violates the Constitution's guarantee of due process." 135 S. Ct. at 2563. Subsequently, in *Welch v. United States*, 136 S. Ct. 1257 (2016), the Supreme Court held that "*Johnson* announced a substantive rule [of law] that has retroactive effect in cases on collateral review." *Id.* at 1268. Carter now contends that after *Johnson*, the offense of Hobbs Act robbery can no longer qualify as a crime of violence under 18 U.S.C. § 924(c)(3), and thus, his convictions for Counts Two, Four, and Six must be vacated. Although Carter was not sentenced pursuant to ACCA, he asserts that the residual clause of § 924(c) is materially indistinguishable from the

15

ACCA residual clause (18 U.S.C. § 924(e)(2)(B)(ii)) that the Supreme Court in *Johnson* struck down as unconstitutionally vague. (§ 2255 Mot. 12.)

Title 18 U.S.C. section 924(c)(1)(A) provides for consecutive periods of imprisonment when a defendant uses or carries a firearm in furtherance of a crime of violence. The baseline additional period of imprisonment is five years. 18 U.S.C. § 924(c)(1)(A)(i). If the defendant brandishes the firearm, the additional period of imprisonment increases to at least seven years. *Id.* § 924(c)(1)(A)(ii). And, if the defendant discharges the firearm, the additional period of imprisonment increases to at least ten years. *Id.* § 924(c)(1)(A)(iii).

The United States can demonstrate that an underlying offense constitutes a crime of violence if it establishes that the offense is a felony and satisfies one of two requirements. Namely, the statute defines a crime of violence as any felony:

> (A) [that] has as an element the use, attempted use, or threatened use of physical force against the person or property of another [(the "Force Clause")], or
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense [(the "Residual Clause")].

*Id.* § 924(c)(3).

A defendant is guilty of Hobbs Act robbery if he or she "obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery . . . or attempts or conspires so to do . . . ." 18 U.S.C. § 1951(a). The statute defines "robbery" as

> the unlawful taking or obtaining of personal property from the person or in the presence of another, against his [or her] will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his [or her] person or property, or property in his [or her] custody or possession, or the person or property of a relative or member of his [or her] family or of anyone in his [or her] company at the time of the taking or obtaining.

*Id.* § 1951(b)(1). The United States Court of Appeals for the Fourth Circuit has not reached the issue of whether Hobbs Act robbery satisfies the Force Clause. Nevertheless, as this Court has

previously concluded:

> a defendant "who commits Hobbs Act robbery by 'fear of injury' necessarily commits it by 'fear of physical force.'" *United States v. Standberry*, No. 3:15cr102, 2015 WL 5920008, at *4 (E.D. Va. Oct. 9, 2015) (citation omitted). This is because "[f]ear is the operative element facilitating the taking," *id.*, and "any act or threatened act which engenders a fear of injury implicates force and potential violence," *id.* (citing *United States v. Castleman*, 134 S. Ct. 1405, 1414–15 (2014)); *see also Castleman*, 134 S. Ct. at 1416–17 (Scalia, J. concurring) ("[I]t is impossible to cause bodily injury without using force 'capable of' producing that result."). Put simply, common sense dictates that any "fear of injury" flows from the fear of physical force.

*United States v. Herstch*, No. 3:17CR92, 2017 WL 4052383, at *4 (E.D. Va. Sept. 12, 2017) (alteration in original). Accordingly, consistent with this Court's earlier decisions, *see id.* at *5, and decisions of many courts of appeal,[9] the Court finds that Hobbs Act robbery constitutes a categorical crime of violence and can therefore serve as the basis for the § 924(c) count.

In light of the conclusion that Hobbs Act robbery categorically meets the definition of a crime of violence under 18 U.S.C. § 924(c)(3)(A), the Court need not reach Carter's argument that § 924(c)(3)(B) is unconstitutionally vague under *Johnson*.[10] As Hobbs Act robbery qualifies as a crime of violence under § 924(c), Claim Four lacks merit and will be DISMISSED.

---

[9] *See, e.g., United States v. Hill*, 890 F.3d 51, 60 (2d Cir. 2018); *United States v. Buck*, 847 F.3d 267, 275 (5th Cir. 2017); *United States v. Rivera*, 847 F.3d 847, 848–49 (7th Cir. 2017); *United States v. Robinson*, 844 F.3d 137, 140–41 (3d Cir. 2016); *United States v. House*, 825 F.3d 381, 387 (8th Cir. 2016); *United States v. Howard*, 650 F. App'x 466, 466 (9th Cir. 2016); *United States v. Moreno*, 665 F. App'x 678, 681 (10th Cir. 2016).

[10] In any event, the Court would reject Carter's request to invalidate the Residual Clause found in § 924(c)(3)(B). The United States Court of Appeals for the Fourth Circuit has yet to decide whether *Johnson* applies to invalidate the Residual Clause of § 924(c) due to vagueness. As the Fourth Circuit has observed, although "the Supreme Court held unconstitutionally vague the [residual clause in ACCA], . . . the [Supreme] Court had no occasion to review . . . the residual clause [of § 924(c)]." *United States v. Fuertes*, 805 F.3d 485, 499 n.5 (4th Cir. 2015). Nevertheless, several courts of appeal indicate that *Johnson* does not apply to, or invalidate the Residual Clause of 18 U.S.C. § 924(c). *See, e.g., United States v. Taylor*, 814 F.3d 340, 376–79 (6th Cir. 2016); *United States v. Prickett*, 839 F.3d 697–700 (8th Cir. 2016). This Court agrees with the conclusions of the courts that have considered and rejected the notion that *Johnson* applies to or invalidates the Residual Clause.

## V. CONCLUSION

For the foregoing reasons, Carter's § 2255 Motion (ECF No. 130–1) will be DENIED. Carter's *Pro se* § 2255 Motion (ECF No. 109) will be TERMINATED. The action will be DISMISSED. A certificate of appealability will be DENIED.[11]

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 01/24/2019
Richmond, Virginia

---

[11] An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Carter has not satisfied this standard.