IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.  Case No. 3:13cr4

MARION W. CARTER, JR.,

Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Marion W. Carter Jr.'s Motions for Compassionate Release pursuant to Section 603(b) of the First Step Act (the "Motions"). (ECF Nos. 158, 169.) The United States responded to the Motions in opposition (the "Opposition"). (ECF No. 171.) Carter did not reply and the time to do so has expired. The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will grant in part the Motions for Compassionate Release and reduce Carter's sentence from 408 months to 300 months. Carter's release date will thus change from January 1, 2042 to January 1, 2033.

### I. Background

On April 2, 2013, an Eastern District of Virginia grand jury named Carter in a seven-count Superseding Indictment charging him with three counts of robbery affecting commerce, in violation of 18 U.S.C. § 1951(a) ("Hobbs Act robbery") (Counts One, Three, and Five), possession of and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts Two, Four, and Six), and possession of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count Seven). (ECF No. 19, at 1–5.)

The charges resulted from three robberies: (1) a November 2, 2012 robbery of a Baskin Robbins located at 6940 Forest Hill Avenue; (2) November 8, 2012 robbery of Fast Auto Loans located at 6150 Midlothian Turnpike; and, (3) the November 14, 2012 robbery of the Fast Mart located at 2107 Semmes Avenue. (*See* ECF No. 19, at 1–5; ECF No. 1, at 3–6.) Carter moved to sever Count Seven from the remaining counts, (ECF No. 24), which the Court denied, (ECF Nos. 35, 36). Thereafter, on May 1, 2013, Carter pleaded guilty to Count Seven without the benefit of a plea agreement. (ECF Nos. 44, 45.) On July 26, 2013, a jury found Carter guilty of Counts One through Five and not guilty of Count Six. (ECF No. 74, at 1–3.)

Prior to sentencing, the United States Probation Office prepared the Presentence Report ("PSR") for Carter summarizing his criminal history. (ECF No. 160.) Carter fell into criminal history category VI based on prior felony convictions for burglary, robbery, breaking and entering, unlawfully possessing a firearm, and possession of cocaine with intent to distribute. (ECF No. 160, at 10–14, 20.) As stated in the PSR, the mandatory penalties for Counts Two and Four, the two § 924(c) offenses for possessing and brandishing a firearm, established the relevant Sentencing Guidelines range. (ECF No. 160, at 20.) Specifically, when Carter committed his crimes, a second or subsequent count of conviction under § 924(c) triggered a higher mandatory minimum penalty, as well as mandatory "stacking" of these sentences for each count of conviction.[1] Thus, a defendant like Carter who faced two or more counts for possessing and brandishing a firearm, in violation of § 924(c)(1)(A)(ii), in a single charging instrument would

---

[1] This was so because in *Deal v. United States*, 508 U.S. 129 (1993), the Supreme Court held that even when multiple counts under § 924(c) were in the same indictment, a conviction on the first count did not have to be final before triggering the mandatory increases and stacking provisions.

2

receive a mandatory minimum sentence of seven years on the first count, and 25 years on each additional count. (ECF No. 160, at 20.)

In accordance with the penalties specified in § 924(c), the Court sentenced Carter to a total of 408 months of incarceration for Counts One through Five and Seven. (ECF No. 84, at 3.) The Court imposed a sentence of 24 months for Counts One, Three, Five, and Seven, running concurrent to each other; the mandatory minimum sentence of 84 months for Count Two, running consecutive to Counts One, Three, Five, and Seven; and the mandatory minimum sentence of 300 months for Count Four, running consecutive to all other counts. (ECF No. 84, at 3.) Carter appealed, challenging the sufficiency of the evidence for Counts One through Five. *See United States v. Carter*, 575 F. App'x 149, 149 (4th Cir. 2014). The United States Court of Appeals for the Fourth Circuit rejected these arguments and affirmed his convictions. *Id.* at 150–51.

After the Court sentenced Carter in 2013, Congress enacted the First Step Act of 2018 and modified the penalties applicable to defendants who, like Carter, face stacked § 924(c)(1)(A)(ii) convictions at sentencing. *See United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020) ("The First Step Act ended this practice, known as sentence 'stacking,' by clarifying that the 25-year mandatory minimum applies only when a prior § 924(c) conviction arises from a separate case and already has become final.") (internal quotation marks and citations omitted). As a result, multiple § 924(c) offenses brought in the same charging instrument no longer trigger a 25-year mandatory minimum consecutive sentence. Rather, defendants sentenced for two § 924(c)(1)(A)(ii) offenses face a mandatory minimum 14-year sentence (seven years for each offense). As to Carter, because the Court imposed his sentence in 2013 prior to the enactment of

the First Step Act, he remains subject to the 32-year mandatory minimum sentence that he received for Counts Two and Four.

Carter is currently housed at FCI Coleman Medium. Bureau of Prisons, *Fed. Inmate Locator*, https://bit.ly/3P3slSW. The Bureau of Prisons ("BOP") states that Carter will be released on January 1, 2042. *Id.* On August 3, 2020, Carter submitted a request for compassionate release to the Warden of Leavenworth USP.[2] (ECF No. 170-1.) On August 25, 2020, the Warden denied Carter's request. (ECF No. 170-1.) On October 9, 2020, Carter filed with the Court his *pro se* Motion for Compassionate Release. (ECF No. 158.) Upon review, the Court appointed Carter counsel. (ECF No. 162.) On April 19, 2021, Counsel filed the instant Motion for Compassionate Release. (ECF No. 169.)

In the Motion, Carter sets forth two reasons why the Court should find extraordinary and compelling reasons exist in his case that warrant granting him compassionate release. (ECF No. 169, at 10–14.) First, Carter claims that he "received a draconian sentence under a statutory provision that Congress has since found too punitive but has not made retroactively applicable." (ECF No. 169, at 10.) Counsel for Carter posits that if he "were sentenced today, his two § 924(c) convictions would result in a consecutive sentence of 14 rather than 32 years." (ECF No. 169, at 11.) Second, Carter argues that his medical conditions support the need for his immediate release. (ECF No. 169, at 12.) Carter, now 66-years old, suffers from "arthritis in his feet and knees, which severely limits his mobility, [in addition to] high blood pressure and acid reflux." (ECF No. 169, at 12–13.) The PSR similarly provided information on Carter's physical condition prior to his 2013 sentencing, confirming that he suffered arthritis, high blood pressure, and acid reflux, but that "his overall health [was] otherwise good." (ECF No. 160 ¶ 59.) In

---

[2] Carter resided at Leavenworth at the time he filed the instant Motions.

further support of his request for compassionate release, Carter avers that he has "a record of rehabilitation," noting his work as a GED tutor while incarcerated and his lack of disciplinary infractions. (ECF No. 158, at 9.)

The United States opposes Carter's request for compassionate release, observing that Carter tested positive for COVID-19 on September 17, 2020 and that he refused a COVID-19 vaccine on March 17, 2021. (ECF No. 171, at 3.) The United States argues that Carter's "decision to refuse the vaccine undermines any argument that [his facilities have] not taken sufficient steps to protect him from contracting COVID-19." (ECF No. 171, at 14.) The United States further contends that Carter committed the underlying offenses at age 57 and that he has a "lengthy criminal history" that demonstrates "a clear pattern of engaging in serious, criminal activity to include unlawful firearm possession throughout his adult life." (ECF No. 171, at 9.) For the underlying charges, Carter committed "three separate, armed commercial robberies in less than two weeks in November 2012," and threatened those he encountered. (ECF No. 171, at 16.)

As of July 6, 2022, the Bureau of Prisons reports that at FCI Coleman Medium, 851 staff and 5,339 inmates have received COVID-19 vaccines, for a total of 6,190 individuals. *See* Bureau of Prisons, *COVID-19*, https://bit.ly/3Rdn39s.

## II. Legal Standard: Compassionate Release Under the First Step Act of 2018

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C.

5

§ 3582(c)(1)(A).[3] Prior to the First Step Act in 2018, the BOP had the sole authority to petition the court for sentence modifications on compassionate release grounds. *Coleman v. United States*, No. 4:17cr69, 2020 WL 3039123, at *1 (E.D. Va. June 4, 2020). Following enactment of the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)). However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t).

---

[3] Section 3582(c)(1)(A) states:

> The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

A.   **Exhaustion of Administrative Remedies**

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time."). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020).

The court may waive the exhaustion requirement, however, in certain circumstances. *United States v. Jones*, No. 3:11cr249, ECF No. 47, at *2–3 (E.D. Va. Apr. 3, 2020) (Lauck, J.). Courts may waive exhaustion if: "pursuing an administrative remedy would be futile[,]" "'exhaustion via the agency review process would result in inadequate relief[,]' or 'pursuit of agency review would subject the petitioner to undue prejudice.'" *United States v. Robinson*, No. 3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020) (Lauck, J.) (quoting *Poulios v. United States*, No. 2:09cr109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020) (Jackson, J.)).

Throughout the country, courts have found the coronavirus pandemic, combined with a vulnerable defendant with underlying health conditions, implicates all three exceptions justifying a waiver of the exhaustion requirement. *See United States v. Zukerman*, 451 F. Supp. 3d 329, 332–33 (S.D.N.Y. 2020) (holding that defendant's elderly age and serious health conditions

warrant a waiver of exhaustion requirements because of the ongoing risk of infection while incarcerated); *United States v. Perez*, 451 F. Supp. 3d 288, 293 (S.D.N.Y. 2020) (waiving the exhaustion requirement because exhaustion would be futile as defendant would not see thirty days lapse before his release date).

### B. Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Commission further defines "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15cr00073, ECF No. 109, at *4 (E.D. Va. May 21, 2020). The Sentencing Commission identifies four instructive categories of extraordinary and compelling reasons that allow for a sentence to be modified: the

petitioner's medical condition, age, family circumstances, and other reasons. U.S.S.G. § 1B1.13, n.1 (A)–(D).[4]

The United States Court of Appeals for the Fourth Circuit has explained, however, that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. "As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *Id.* at 283; *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021) (concluding that § 1B1.13 does not apply to compassionate release motions that inmates (or counsel acting on behalf of inmates) file directly with the district court). Furthermore, the Guidelines, while helpful, are merely advisory and do not bind the Court.

---

[4] The United States Sentencing Guideline § 1B1.13 provides that:

> Upon *motion of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
> (1) (A) extraordinary and compelling reasons warrant the reduction; or
> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (emphasis added).

Recognizing this, the Fourth Circuit has held that "courts may legitimately consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." *McCoy*, 981 F.3d at 285–86. Relevant here, in 2018, Congress modified the penalties applicable to defendants who, like Carter, face stacked § 924(c)(1)(A) convictions at sentencing. *See McCoy*, 981 F.3d at 275. As a result, courts have recognized that these changed penalties may provide an impetus for compassionate release. *See United States v. Redd*, 444 F. Supp. 3d 717, 723 (E.D. Va. 2020) ("There is no doubt that there is a gross disparity between the sentence Mr. Redd received and the sentence he would have received after the First Step Act.") (citation omitted).

If sentenced today, Carter would receive for Counts Two and Four a mandatory minimum 14-year term of imprisonment rather than a mandatory minimum 32-year term. (*See* ECF No. 84, at 1 (convictions for two counts of possessing and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii)).) While Congress did not make this change retroactive, *United States v. Jordan*, 952 F.3d 160, 174 (4th Cir. 2020) (holding that the First Step Act's changes to § 924(c) do not apply retroactively to previously imposed sentences), the Fourth Circuit has indicated in the postconviction context that a district court may find it appropriate to consider the significant reductions to the statutory penalties that defendants with stacked § 924(c) convictions would face if sentenced today. *McCoy*, 981 F.3d at 279 (affirming district court's decision to grant sentence reduction, remarking there exists "nothing inconsistent about Congress's paired First Step Act judgments: that not all defendants convicted under § 924(c) should receive new sentences, but that the courts should be empowered to relieve some defendants of those sentences on a case-by-case basis") (internal quotation marks and citations omitted).

### C. Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the § 3553(a) factors and any relevant post-conviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

### III. Analysis

After due consideration, the Court will grant the Motions in part and reduce Carter's sentence to 300 months.[5]

---

[5] The Fourth Circuit has not addressed in published authority whether granting compassionate release offers only the opportunity to impose a sentence of time served or whether a court may grant a partial sentence reduction. *See United States v. Siegel*, No. 21-6426, 2022 WL 612357, at *1 (4th Cir. Mar. 2, 2022) (per curiam) (noting that a defendant's "motion for compassionate release did not request a sentence reduction for less than time served" and that she had therefore waived that argument on appeal). Absent such authority, and considering the record before it, the Court finds a reduction from 408 months' imprisonment to 300 months' imprisonment appropriate here.

Courts outside the Fourth Circuit have recognized that partial sentence reductions may be appropriate under First Step Act Section 603. For instance, a court in the Southern District of New York recently granted a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) for a 54-year-old inmate who, along with his co-defendant, ran a cocaine and heroin racketeering enterprise and who was found guilty by a jury of having participated in the torture and murder of a government confidential informant. *United States v. Rodriguez*, 492 F. Supp. 3d 306, 308 (S.D.N.Y. 2020). In *Rodriguez*, Judge Jed S. Rakoff found that the defendant had "undertaken extraordinary efforts at rehabilitation" that "weigh[ed] strongly in favor of a sentence reduction," and reduced the defendant's sentence from life to 30 years' imprisonment. *Id.* at 314. Although the court did not reduce the defendant's sentence to time served, Judge Rakoff observed that the

11

The Court first determines that Carter has sufficiently exhausted his administrative remedies. Next, Carter offers sufficient "extraordinary and compelling reasons" to support his request for release. 18 U.S.C. § 3582(c)(1)(A)(i). Considering the specific circumstances of Carter's offenses, his 408-month sentence is "disproportionate to both 'the seriousness of the offense and to what Congress now deems appropriate for this kind of conduct.'" *McCoy*, 981 F.3d at 279 (quoting *United States v. Bryant*, No. 95-202-CCB-3, 2020 WL 2085471, at *5 (D. Md. Apr. 30, 2020)). Of course, the underlying robberies are serious offenses that resulted in real and meaningful harm to the individuals Carter threatened during the course of his robberies. And indeed, for that reason, the Court will not fully reduce his sentence resulting from Count Four to the seven-year minimum it would be today. Nevertheless, that same extremely serious conduct would subject a defendant to a mandatory minimum sentence of 14 years' imprisonment on Counts Two and Four if sentenced today. In contrast, when the Court sentenced Carter five years before the enactment of the First Step Act, he faced a mandatory minimum sentence of 32 years for Counts Two and Four. In other words, Carter was subjected to a sentence eighteen years longer than it would be if he had been sentenced after Congress enacted the First Step Act. Given these specific characteristics of Carter and his offenses, the sentence imposed differs to a "dramatic degree" from "what Congress now deems appropriate," constituting an extraordinary and compelling reason to consider his request for compassionate release. *Id.* at 288.

A court still must consider any applicable 18 U.S.C. § 3553(a) factors even after finding that there are extraordinary and compelling grounds for a sentence modification under

---

United States Court of Appeals for the Second Circuit "recognized that the [compassionate release] statute provided . . . flexibility [in sentencing], *see United States v. Brooker*, 976 F.3d 228, 238 (2d Cir. 2020), thus allowing a [sentence reduction] in this case." *Id.*

§ 3582(c)(1)(A). As discussed previously regarding the disproportionality of Carter's sentence, the Court finds that the nature and circumstances of the offense, and the characteristics of Carter, weigh in favor of granting him partial compassionate release. 18 U.S.C. § 3553(a)(1). Carter committed serious offenses, for which he will serve a 25-year prison sentence after the Court grants him a partial sentence reduction.[6] Additionally, upon release at approximately 78 years old, Carter will begin to serve a five-year supervised release term. While Carter's 25-year sentence adequately deters criminal conduct, the seriousness of his offenses and the need to protect the public outweigh his request for immediate release. Additionally, Carter's criminal history and firearm offenses suggest that the Court should consider public safety and whether his sentence promotes respect for the law, which strongly weigh against his immediate release.

In his *pro se* Motion, Carter contends that the Court should grant him relief because he has engaged in BOP-sponsored educational and vocational opportunities. (ECF No. 158, at 9.) In *United States v. Martin*, the Fourth Circuit vacated and remanded the district court's denial of both defendants' motions to reduce sentence because the district court failed to address any new mitigating evidence when denying the motions. 916 F.3d 397–98. The Fourth Circuit has explained that if an individual is eligible for a sentence reduction, the district court must give

---

[6] The table below summarizes the differences in the statutory penalties applicable to Carter before the First Step Act of 2018 and after the Court partially reduces his sentence:

|  | **Original Penalty for two § 924(c)(1)(A)(ii) offenses in the same charging document** | **First Step Act (modifying mandatory penalties for stacked § 924(c)(1)(A)(ii) offenses)** |
|---|---|---|
| Mandatory minimum | Count Two 7 years (84 months) + Count Four 25 years (300 months) + Other Counts 24 months = 408 months | Count Two 7 years (84 months) + Count Four partially reduced to 16 years (192 months) + Other Counts 24 months = 300 months |
| Sentence Imposed | 408 months (ECF No. 84, at 3.) | 300 months |

13

weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken." *Id.* at 397. Carter displays progress in his rehabilitation, and this Court commends his efforts. However, Congress has made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Carter's postconviction record, including his rehabilitative efforts and disciplinary infractions, supports the Court's decision to grant him a limited sentence reduction. While Carter's good behavior and participation in GED programs during his limited time in prison are acknowledged, these measures do not warrant his immediate release considering the seriousness of his convictions and the remaining time on his sentence.

## IV. Conclusion

For the reasons explained above, the Court will grant in part the Motions for Compassionate Release. (ECF Nos. 158, 169.)

An appropriate Order shall issue.

Date: 7-13-2022
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge